UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO. 2:21-cv-00802-SPC-MRM

ACUFLOOR, LLC,

      Plaintiff,

v.

EVENTILE, INC. and
FORPAC, LLC,

      Defendant.

_____/

## DEFENDANT FORPAC, LLC'S MOTION TO STAY OR BIFURCATE

Defendant, FORPAC, LLC ("Forpac"), by and through its undersigned counsel, hereby moves to bifurcate the patent infringement claims against it from those against Defendant, EVENTILE, INC. ("Eventile"), and that the case against Forpac be stayed pending the outcome of the case against Eventile. In support thereof, Forpac states as follows:

## I.    CONCISE STATEMENT OF RELIEF REQUESTED

Defendant Forpac (the customer) moves to bifurcate the patent infringement claims brought against it from those brought by Plaintiff against Defendant Eventile, and requests that the case against Forpac be stayed pending the outcome of the case against Eventile. Forpac also requests that discovery sought from it be stayed, or that it be limited to only what is necessary for Plaintiff to prosecute the case against Eventile.

## II.   PRELIMINARY STATEMENT OF THE BASIS FOR THE REQUEST

This patent infringement case joins both Eventile, who was the sole manufacturer/importer of the accused products, as well as Forpac, one of Eventile's customers that purchased the accused products for resale. A stay of the claims against Forpac is appropriate and warranted because: (1) Eventile is the "true defendant"; (2) the claims against Forpac are merely peripheral; (3) the stay will simplify issues and conserve both the parties' and judicial resources; and (4) a stay will not unduly prejudice the Plaintiff. *See, e.g., In re Nintendo of Am., Inc.*, 756 F.3d at 1364 (Fed. Cir. 2014).; *Thermolife Int'l, LLC v. Vitamin Shoppe*, Inc., No. 0:16-cv-60693-UU, 2016 U.S. Dist. LEXIS 122110, at *14-15 (S.D. Fla. June 8, 2016); *and Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 2003 U.S. Dist. LEXIS 4003 (E.D. Va. 2003).  Notably, Forpac's Motion comes at a very early stage in the case. The Motion has been filed before discovery has commenced and before a trial date has been set. Furthermore, Plaintiff will not be prejudiced because most, if not all, of the allegedly infringing activities have either ceased or took place before some of the asserted patents issued (sales of which would not have given rise to patent infringement).

## III.   BACKGROUND

On October 29, 2021, Plaintiff, ACUFLOOR, LLC ("Plaintiff"), initiated this action against both Eventile and Forpac for patent infringement related to its "Acufloor System" for leveling tiles consisting of, essentially, clips inserted

between tiles and wedges that serve to snug the clips against the tiles. Plaintiff alleges that Eventile and Forpac have infringed two[1] of Plaintiff's U.S. Patents, namely No. 10,513,857 ("the '857 Patent"), entitled "Device For Leveling and Aligning Tiles and Method for Leveling and Aligning Tiles," and No. 10,704,274 ("the '274 Patent"), entitled "Device For Leveling and Aligning Tiles and Method for Leveling and Aligning Tiles," both issued to Clinton D. Bunch and Joshua A. Bunch (the "Subject Patents"). Notably, there are no claims for relief solely against Forpac in the Plaintiff's shotgun pleading, as outlined in the chart below:

| Claim No. | Claim for Relief | Patent No. | Party |
|---|---|---|---|
| Second | Direct Infringement | '857 | Against All Defendants |
| Third | Induced Infringement | '857 | Against All Defendants |
| Fourth | Contributory Infringement | '857 | Against All Defendants |
| Sixth | Direct Infringement | '274 | Against All Defendants |
| Seventh | Induced Infringement | '274 | Against All Defendants |
| Eighth | Contributory Infringement | '274 | Against All Defendants |

The remaining claims are asserted against Eventile alone. As is readily apparent, no claim for relief alleges that Forpac is independently liable for any of the alleged infringement, presumably because Plaintiff has recognized that Forpac is merely a customer of Eventile[2]. Even as alleged in the complaint, Forpac's

---

[1] There are six U.S. Patents referenced in the complaint, however, Forpac is only alleged to have infringed two of the asserted patents.
[2] Forpac notes that Eventile has filed a Motion to Dismiss [*See* Doc.39] on the

connection to this lawsuit is that it purchased the accused products from Eventile. (*See* Doc. 1, Complaint at ₱ 29). As a customer of Eventile, Plaintiff's claims against Forpac are merely peripheral to the claims against Eventile. Therefore, the Court should bifurcate and stay Plaintiff's infringement claims against Forpac for the following reasons.

## IV.   **LEGAL MEMORANDUM**

### A. The Rationale Underpinning the "Customer-Suit Exception" Supports Bifurcating and Staying Litigation against Forpac until the Claims of Infringement against Eventile are Resolved

District courts and indeed the Court of Appeals for the Federal Circuit have found that the rationale underpinning the customer-suit exception should be applied to grant a stay in this exact circumstance. To begin with, the customer-suit exception has been defined as follows: "When a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally take precedence." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). "This exception to the first-to-file rule, the 'customer-suit exception,' exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the "true defendant"

---

grounds that the complaint, *inter alia*, constitutes a shotgun pleading because: (a) it asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which act or omission; (b)  it improperly "lumps" the defendants together; and (c) the general allegations are asserted with no specific connection to any particular cause of action.

in the dispute. *In re Nintendo*, 756 F.3d 1365 (citing *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977)). District courts have recognized an obligation to weight these considerations. *See, Salazar v. HTC Corp.*, No. 2:16-CV-01096-JRG-RSP, 2017 U.S. Dist. LEXIS 132856, at *4 (E.D. Tex. Aug. 20, 2017).

> i. The Customer-Suit Exception Applies to Suits where a Downstream Reseller has been joined with an Upstream Importer

In the case of *In re Nintendo of Am., Inc.* the Court of Appeals for the Federal Circuit recognized that the principles underlying the customer-suit exception govern when the upstream and downstream defendants are joined in a single suit, as is the case at hand. In that case, Nintendo of America, Inc., ("Nintendo") the distributor of the "DS" video game system, had been joined as a defendant in a patent infringement lawsuit in the Eastern District of Texas along with eleven of its retailers. *In re Nintendo of Am., Inc.*, 756 F.3d at 1364 (Fed. Cir. 2014). Nintendo moved to sever and stay the claims against its retailers, the district court denied the motion, and Nintendo appealed.

The Federal Circuit reasoned that the goals of the customer-suit exception and Rule 21 are "all designed to facilitate just, convenient, efficient, and less expensive determination" and that they serve to "protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Id.* at 1365-66 (citations omitted). Moreover, where upstream and downstream defendants are joined in the same suit, there can be no claim against the downstream defendants unless the infringement claims against the upstream defendant are resolved in

5

favor of the patent owner. *Id.* at 1366. Even where the claims against both parties are not completely coextensive, "their prosecution will be advanced if [the patent owner] is successful on the major premises being litigated [against the upstream defendant] and may well be mooted if [the patent owner] is unsuccessful." *Id.* Accordingly, the Federal Circuit ordered that the case against Nintendo's retailers be severed and stayed.

Notably, as is relevant to this case, the customer-suit exception is not strictly applied to manufacturers and has been found appropriate when the upstream defendant is the importer. *See Rhode Gear U.S.A. v. Frank's Spoke n' Wheel, Inc.*, 225 U.S.P.Q. 1256 (D. Mass. 1985) (applying the customer suit exception to a declaratory judgment action brought by an importer).

In the case at hand, Eventile imported a product that allegedly infringed Plaintiff's patents and sold the product to Forpac. Eventile did so on a "white label" basis – i.e., Eventile's foreign manufacturer placed Forpac's branding on the product at the time of manufacture. Without modifying or altering the product in any way, Forpac then resold the accused products to its own customers. Accordingly, Forpac witnesses were not involved in the design and development of the product that Eventile provided to Forpac. By the same token, Forpac's purchases of the accused products are inevitably accounted for in Eventile's ledger, insofar as Forpac purchased every single one of the allegedly infringing products from Eventile. Accordingly, Forpac is merely peripheral to this patent infringement action; all material evidence and testimony will be provided by the

6

upstream defendant Eventile. As such, the Court should bifurcate and stay Plaintiff's claims against Forpac.

> ii. <u>Having Established that the Customer-Suit Exception Applies to this Case, the Court should Sever and Stay the Claims Against Forpac</u>

Virtually identical circumstances have been addressed by district courts before and have resulted in severing the case against the downstream defendant, while also staying the case until the claims against the upstream defendant have been resolved. "This inquiry is simplest—and the customer-suit exception most apt—where the customer is accused of directly infringing apparatus claims, because the manufacturer's liability will necessarily turn on whether the accused product satisfies every limitation of those claims, and a resolution of that issue in the manufacturer's suit will also resolve whether the customer infringes." *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2T5-CV-1202, 2016 U.S. Dist. LEXIS 55205, 2016 WL 1659924, at *4 (E.D. Tex. Apr. 26, 2016). *See also, Mantissa Corp. v. Old Sec. Bancorp, Inc.*, No. 17 C 9175, 2018 U.S. Dist. LEXIS 103365 (N.D. Ill. June 20, 2018). To be clear, all the utility patents in this case include apparatus claims, and none include method claims. *See, e.g.,* Claim 1 of U.S. Patent No. 10,704,274 reciting "[a] tile leveling *device...*" (emphasis added); *and* Claim 1 of U.S. Patent No. 10,704,271 reciting "[a] wedge *device...*" (emphasis added).

Federal courts in Florida have also relied on *In re Nintendo* to sever and stay cases against downstream defendants in virtually identical scenarios. *See, e.g.,*

*Thermolife Int'l, LLC v. Vitamin Shoppe*, Inc., No. 0:16-cv-60693-UU, 2016 U.S. Dist. LEXIS 122110, at \*14-15 (S.D. Fla. June 8, 2016). In *Thermolife,* the complaint alleged direct infringement against both manufacturer and reseller defendants which was premised on distribution of the allegedly infringing products. Thus, the court reasoned, *"*any claim of patent infringement against [the reseller defendants] is dependent upon a finding of patent infringement by [the manufacturer defendant]..." *Id.* "Here, just as in Nintendo, the Court must find [the manufacturer defendant] liable before [the patent owners] can recover from [the reseller defendants] because [the reseller defendants] are, indisputably, mere purchasers of the Infringing Products who resold these products to consumers and other retailers from Florida.... Under these circumstances, the Court finds it appropriate to stay [the patent owners'] claims against [the reseller defendants] pending resolution of [the] claims against [the manufacturer defendant] in this case." *Id.* (internal citations and quotations omitted).

Plaintiff may argue that a stay is inappropriate because Forpac has not taken the drastic step of stipulating to be bound by the results of the case against Eventile. However, such a stipulation is neither required nor necessary particularly where, as here, the claims against both parties are virtually coextensive. *See, e.g., Leviton Mfg. Co. v. Interline Brands, Inc.*, No. 3:05-cv-123-J-33MCR, 2006 U.S. Dist. LEXIS 61944, at \*8 (M.D. Fla. Aug. 30, 2006)(finding that such a stipulation is not required, and that a stay was in fact appropriate, where "[a]lthough there may be additional issues involving the defendants in the [upstream] action, their

prosecution will be advanced if [the patent owner] is successful on the major premises being litigated in [the upstream action], and may well be mooted if [the patent owner] is unsuccessful.") Moreover, "the manufacturer's case need only have the potential to resolve the 'major issues' concerning the claims against the customer — not every issue — in order to justify a stay of the customer suits." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011). The Plaintiff's allegations of "willful" infringement by Forpac do not preclude a stay under the same rationale.

### B. The Action against Forpac should also be Bifurcated and Stayed under the Rubric of Rule 21 and the Court's Discretion because Forpac is Peripheral, it will Simplify the Issues, and it will not Prejudice any Party.

Even aside from the particular circumstances of the customer-suit exception, the Court has a separate basis to sever and stay the case against Forpac. A district court is empowered to order severance of defendants and to issue a stay *sua sponte* as to the remainder of the action. *See,* Fed. R. Civ. P. 21; *see also Landis v. North American Co.,* 299 U.S. 248, 254-5, 81 L. Ed. 153, 57 S. Ct. 163 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel, and for the litigants."); *see also In re All Asbestos Cases Pending in the United States District Court for the District of Maryland*, 1983 U.S. Dist. LEXIS 10719, *11-12 (D. Md. Dec. 16, 1983) (en banc) ("Rule 21 ... permits the Court *sua sponte* to sever claims."). As demonstrated above, the claims against

9

Forpac are merely peripheral because Eventile is the "true defendant" and Forpac is not in possession of information relevant to liability that the Plaintiff cannot otherwise obtain from Eventile. "Courts should sever peripheral claims where the 'administration of justice would be materially advanced.'" *Corry v. CFM Majestic, Inc.,* 16 F. Supp. 2d 660, 665 (E.D. Va. 1998) (quoting *Wyndham Associates v. Bintliff,* 398 F.2d 614, 618-19 (2nd Cir. 1968) *cert denied* 393 U.S. 977, 21 L. Ed. 2d 438, 89 S. Ct. 444 (1968)).

The case of *Koh v. Microtek Int'l, Inc.*, is instructive. In *Koh,* a patent infringement suit was brought against number of defendants including the sole importer of the accused article, as well as a retailer. Severance of claims against the retailer was found to be appropriate because the remaining claims (against the upstream defendant) were potentially dispositive of severed claims and the severed claims were peripheral to remaining claims. *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 2003 U.S. Dist. LEXIS 4003 (E.D. Va. 2003). The court reasoned that the infringement claims against the "sole importer are more likely to restore contested property rights nationwide than securing an injunction enjoining [the retailer] from selling infringing products from existing inventory. As a result, [the retailer] is only peripherally involved in this action." *Id.* at 632 (internal citations and quotations omitted). Furthermore, the court went on, "if the [patent owners] obtain an infringement verdict against [sole importer], and the [patent owners] collect royalties from [the sole importer], the [patent owner] cannot in turn collect royalties from [the retailer]. *Id.* at 633. *See also, Intel Corp. v. ULSI Sys. Tech.,*

10

*Inc.,* 995 F.2d 1566, 1568-69 (Fed. Cir. 1993) (holding that a patentee can collect only one royalty from a patent infringement). Thus, in *Koh,* the infringement claims against the importer were the "core claims" in the action, and the court determined that adjudication of them would dispose of any claims against the retailer. *Koh,* 250 F. Supp. 2d at 633. *See also LG Elecs. v. Advance Creative Comput. Corp.,* 131 F. Supp. 2d 804, 812 (E.D. Va. 2001) (holding that the adjudication of claims against an infringing product's manufacturer would resolve claims against a mere reseller).

Here, as previously stated, Eventile, not Forpac, is the upstream defendant. Forpac is merely a peripheral defendant, sued solely on the ground that it purchased and resold an allegedly infringing product from Eventile. On reviewing the ten claims for relief in the Complaint [Doc. 1] it is notable that Eventile is named in all counts and liability is asserted against Eventile alone in four of the counts. Forpac is not accused of having liability independent from Eventile. Therefore, Plaintiff's suit is brought primarily against Eventile, which has a greater interest in defending against charges of patent infringement. Thus, staying the case against Forpac is in line with the *Koh* precedent.

District courts have further opined that the rationale behind bifurcating and staying a case like the instant case is further supported because "second-hand entities like retailers or distributors [are] not involved and [would] not have substantive knowledge about the patent infringement, which would begin at the design and manufacture stages." *Richmond v. Lumisol Elec. Ltd.,* 2014 U.S. Dist.

11

LEXIS 59939 (N.J. D.C. 2014); *See Upaid Sys., Ltd. v. CleanDan*, No. SACV1800619ABSSX, 2018 U.S. Dist. LEXIS 226059, 2018 WL 5279567 (C.D. Cal. July 25, 2018). The upstream defendant represents "the real party in interest," and, ultimately, an infringement claim against the upstream defendant "is more likely to restore contested property rights nationwide than securing an injunction" against a downstream defendant purchaser. *Id.*

Finally, even under the most general rubric for assessing whether a stay is appropriate in a patent infringement case, (such as when the asserted patent is undergoing reexamination), a stay here would be appropriate. Courts generally consider two factors when determining whether a stay is appropriate in a patent case: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; and (2) whether a stay will simplify the issues and trial of the case. *In re Body Science LLC Patent Litig*., No. 12-md-2375-FDS, 2012 U.S. Dist. LEXIS 158835, 2012 WL 5449667, at *3 (D. Mass. Nov. 2, 2012). A third factor, whether discovery is complete and whether a trial date has been set may also be considered. *Id.*

The court in *Honeywell Int'l, Inc. v. Audiovox Commc'ns Corp.* applied this analysis to a similarly situated case and determined that staying the case against customer defendants and allowing the case to proceed against the manufacturer defendant, would not unduly prejudice the patent owner and would "vastly simplify" the issues. 2005 U.S. Dist. LEXIS 22933, 2005 WL 2465898 (D. Del. May 18, 2005). The court also considered that discovery had not yet begun, and no trial

12

date had been set. Notably, in the case at hand, discovery has not yet begun, and the Court has yet to issue a scheduling order.

No prejudice will befall the patent owner for the additional reason that sales of the accused products have ceased. Without an urgent need to enjoin ongoing and allegedly infringing activity, the Plaintiff will not be prejudiced by mere delay. Moreover, this Court has found that delay, by itself, is not a source of prejudice. *See, e.g., CANVS Corp. v. FLIR Sys.*, No. 2:14-cv-180-CHAPPELL, 2014 U.S. Dist. LEXIS 168682, at *8 (M.D. Fla. Dec. 5, 2014). Beyond this issue, much of the allegedly infringing activity took place before issuance of the asserted patents, sales of which would not give rise to claims of patent infringement. *See,* Eventile's Motion to Dismiss [Doc. 39] at p. 3 (addressing the failure of the complaint to assert that any infringement took place during the term of the patent, which is crucial because there are various versions of the accused products, some of which have been discontinued and were no longer being manufactured or sold prior to issuance of the asserted patents); *see also, Sundesa, LLC v. JH Studios, Inc.*, Case No. 8:19-cv-1809-T-36AAS, 2020 WL 4003127 at *5 (M.D. Fla., June 15, 2020)(dismissing cause of action for failure to allege that any infringement occurred during the term of the patent).

### C. Discovery Should be Stayed against Forpac but the Court may also Limit Discovery sought from Forpac to only those Issues Necessary for Plaintiff to Prosecute the Case

As discussed above, Eventile was the sole importer of the accused products, and was Forpac's only supplier for the involved products. Therefore, the issues of

infringement between Eventile and Forpac are completely coextensive. There should be no need for discovery from Forpac because all evidence relevant to the question of infringement will be in the possession of Eventile. However, to the extent that the Court concludes otherwise, it does not preclude a stay because the Court may order limited discovery from Forpac so that Plaintiff can obtain only the information necessary to prosecute its case against Eventile that it cannot otherwise obtain from Eventile or others.

By way of example, in the *Honeywell* case, the patent owner was embroiled in several lawsuits that included at least one manufacturer and many retailers of the accused product. *Id* at *3. After consolidating the actions, the court stayed the litigation against the retailer defendants, but permitted the patent owner to seek limited discovery against the retailers solely to learn the identity of other potential suppliers of the accused product. *Id* at *14. To be clear, the circumstances are different in the present case, where Eventile was the sole importer/manufacturer. The *Honeywell* case merely exemplifies the Court's discretion. Therefore, even to the extent that Plaintiff alleges there is some critical information only in the possession of Forpac (which Forpac does not believe to be the case), the Court may still bifurcate and stay the case.

## B. CONCLUSION

For the foregoing reasons, under any relevant rubric, an order severing and staying the claims against Forpac is appropriate, will conserve the parties' and judicial resources, and will not unduly prejudice the Plaintiff. Forpac respectfully

request this Court enter an Order (1) granting this Motion to Sever and Stay Claims Against Forpac, (2) severing and staying Plaintiff's claims against Forpac from those asserted against Eventile, (3) staying discovery against Forpac, or limiting discovery to only what is necessary for Plaintiff to prosecute the case against Eventile, and (4) granting such other and further relief as this Court deems just and proper.

### LOCAL RULE 3.01(G) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned counsel for Forpac certify that prior to filing this Motion, the parties conferred in good faith through e-mail correspondence to resolve this issue. Plaintiff stated that it opposes the relief that Forpac requests in this Motion. Eventile stated that it will not oppose the Motion.

Respectfully Submitted,

Dated: January 27, 2022

/s/ W. John Eagan
John Cyril Malloy, III
Florida Bar No. 964,220
jcmalloy@malloylaw.com
Oliver Alan Ruiz
Florida Bar No. 524,786
oruiz@malloylaw.com
W. John Eagan
Florida Bar No. 105,101
johneagan@malloylaw.com
**MALLOY & MALLOY, P.L.**
2800 S.W. Third Avenue
Miami, Florida  33129
Tel: (305) 858-8000
Fax: (305) 858-0008

*Attorneys for Defendant / Counter-Plaintiff Forpac, LLC*

## CERTIFICATE OF SERVICE

I certify that on January 27, 2022, I filed the foregoing with the Clerk of the Court via CM/ECF which will serve a true and correct copy upon all counsel of record.

/s/ W. John Eagan
W. John Eagan

## SERVICE LIST

John N. Muratides
Florida Bar No.332615
jmuratides@stearnsweaver.com lwade@stearnsweaver.com
Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. 401 E. Jackson Street, Suite 2100
(33602)
Post Office Box 3299
Tampa, Florida 33601
Telephone: (813) 223-4800
Facsimile: (813) 222-5089
Via Email

John R. Emerson Russ.emerson@haynesboone.com *Lead Counsel*
Tiffany M. Cooke Tiffany.cooke@haynesboon.com Haynes and Boone, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
(214) 651-5000
Via Email

*Attorneys for Acufloor, LLC*

Joshua D. Martin
Florida Bar No. 28100
josh.martin@johnsonmartinlaw.com
**JOHNSON & MARTIN, P.A.**
500 W. Cypress Creek Rd., Suite 430
Fort Lauderdale, FL 33309
T: (954) 790-6700

Perry S. Clegg

16

*Pro Hac Vice*
*Lead Counsel*
perry.clegg@johnsonmartinlaw.com
**JOHNSON & MARTIN, P.A.**
50 W. Broadway, Suite 900
Salt Lake City, UT 84101
T: (801) 783-3200

*Attorneys for Defendant Eventile, Inc.*

17