UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ACUFLOOR, LLC,

     Plaintiff,

v.                              Case No.:  2:21-cv-802-SPC-MRM

EVENTILE, INC. and FORPAC,
LLC,

     Defendants.

_____/

## OPINION AND ORDER[1]

Before the Court are Defendant Eventile, Inc's Motion to Dismiss (Doc. 39) and Defendant Forpac, LLC's Motion to Stay or Bifurcate (Doc. 47).

This is a patent case.  Plaintiff Acufloor manufactures, markets, and sells ceramic tiles and tools to aid in tile installation.  That includes a leveling system that helps tile installers produce flat floors and walls.  The Acufloor System includes leveling spacers and wedges.

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them.  The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.



*Figure 1: Acufloor System*

Acufloor owns several patents relating to the Acufloor System, including:

- U.S. Patent No. 10,501,947 – Wedge Device for Leveling Tiles and Clip Set for Use of Same – issued December 10, 2019

- U.S. Patent No. 10,513,857 – Device for Leveling and Aligning Tiles and Method for Leveling and Aligning Tiles – issued December 24, 2019

- U.S. Patent No. 10,704,271 – Wedge Device for Leveling Tiles and Clip Set for Use of Same – issued July 7, 2020

- U.S. Patent No. 10,704,274 – Device for Leveling and Aligning Tiles and Method for Leveling and Aligning Tiles – issued July 7, 2020

- U.S. Design Patent No. D832,680 – Wedge for Tile Installation Device – issued November 6, 2018

- U.S. Design Patent No. D870,527 – Wedge for Tile Installation Device – issued December 24, 2019

Defendants Eventile and Forpac are competitors of Acufloor, and they also sell leveling spacers and wedges for use in tile installation.

  

*Figure 2: Eventile System*

  

*Figure 3: Forpac System*

Forpac purchases all or part of its spacers and wedges from Eventile. Acufloor claims Defendants' spacers and wedges are direct knockoffs of the Acufloor System and asserts the following claims:

- Count 1: direct infringement of the '947 Patent by Eventile

- Count 2: direct infringement of the '857 Patent by both Defendants

- Count 3: induced infringement of the '857 Patent by both Defendants

- Count 4: contributory infringement of the '857 Patent by both Defendants

- Count 5: direct infringement of the '271 Patent by Eventile

- Count 6: direct infringement of the '274 Patent by both Defendants

- Count 7: induced infringement of the '274 Patent by both Defendants

- Count 8: contributory infringement of the '274 Patent by both Defendants

- Count 9: direct infringement of the '680 Design Patent by Eventile

- Count 10: direct infringement of the '527 Design Patent by Eventile

Eventile moves to dismiss Acufloor's Complaint as a shotgun pleading or, alternatively, under Federal Rule of Civil Procedure 12(b)(6). If the Court does not dismiss the Complaint, Eventile requests a more definite statement of Acufloor's claims under Rule 12(e). Forpac asks the Court to bifurcate and stay Acufloor's claims against it and to limit the discovery Acufloor may seek.

## I.     Eventile's Motion

### A. Shotgun Pleading

A shotgun pleading is one that fails to comply with Federal Rules of Civil Procedure 8(a)(2) or 10(b), or both. The problem with shotgun pleadings is that they fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).

The *Weiland* court identified four categories of shotgun pleadings, two of which are relevant here. Eventile first objects to Acufloor's Complaint because each claim incorporates the same set of facts. The most common type of

shotgun pleading identified in *Weiland* "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321. But Acufloor did not commit that sin. Instead, it re-alleged and re-incorporated a common set of factual allegations into each count. The Eleventh Circuit has expressly stated this pleading tactic does not create a shotgun pleading. *See id.* at 1324 ("Weiland's re-alleging of paragraphs 1 through 49 at the beginning of each count looks, at first glance, like the most common type of shotgun pleading. But it is not.")

Eventile also complains that Acufloor made some allegations against "Defendants" collectively. The fourth type of shotgun pleading identified in *Weiland* is a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1321. While Acufloor asserts six of its ten counts jointly against both Defendants, each count separately identifies each Defendant's products that allegedly infringe a specific patent. Like in *Weiland*, "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *Id.* at 1324. Acufloor's Complaint is not a shotgun pleading.

B. <u>Pleading Sufficiency</u>

When considering a motion to dismiss under Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The preferential standard of review, however, does not let all pleadings adorned with facts survive to the next stage of litigation.  The Supreme Court has been clear on this point—a district court should dismiss a claim when a party does not plead facts that make the claim facially plausible.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct.  *See Iqbal*, 556 U.S. at 678.  This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).  And a plaintiff must allege more than labels and conclusions amounting to a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

Eventile argues that Acufloor failed to allege that Eventile committed any infringing acts *during the term of Acufloor's patents*—that is, after the patents issued.  But that is not true.  The patents were issued between 2018 and 2020, and the Complaint alleges, in present tense, that Eventile is "making, using, providing, offering to sell, importing, and/or selling (directly

or through intermediaries) the EvenTile System[,]" which Acufloor considers a direct knockoff of its patent-protected products. (Doc. 1 at 9). The Complaint goes on to identify the specific patent claims Eventile is allegedly infringing. Acufloor's allegations of ongoing infringement raise its "right to relief above the speculative level" and give Eventile fair notice of what the claims are and the grounds upon which they rest. *Twombly*, 550 U.S. 544, 555 (2007). At this stage of the case, that is enough.

Eventile next attacks Acufloor's claims of induced infringement—Counts 3 and 7. "Induced infringement under 35 U.S.C. § 271(b) requires proof of underlying direct infringement, as well as proof that (1) the defendant knew of the patent, (2) the defendant knew or should have known that the induced acts constitute patent infringement, and (3) the defendant possessed specific intent to encourage another's infringement." *Bio Rad Labs., Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1335 (Fed. Cir. 2021) (internal quotation marks and citations omitted).

Eventile argues Acufloor failed to allege the requisite specific intent. "[D]irect evidence is not required" to show intent; "rather, circumstantial evidence may suffice." *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, 7 F.4th 1320, 1327 (Fed. Cir. 2021) (internal quotation marks and citation omitted). "Inducement can be found where there is evidence of active steps taken to encourage direct infringement, which can in turn be found in

advertising an infringing use or instructing how to engage in an infringing use." *Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1334 (Fed. Cir. 2019) (cleaned up).

Acufloor's Complaint alleges that Eventile took active steps to induce its customers to infringe Acufloor's patents. For example, Acufloor alleges,

> Despite knowledge of the '857 Patent, Defendants continue to actively encourage and instruct their customers (for example, through product information and instruction materials) to implement and use the EvenTile System and FORPAC System in ways that directly infringe the '857 Patent…Defendants instruct their customers regarding when and how to implement and use each component of the EvenTile System and FORPAC System during tile installation, including where to place each component, where to position the tile, and how to remove portions of the EvenTile System and FORPAC System when the job is completed.

(Doc. 1 at 17). The Court can reasonably infer from those allegations that Eventile had specific intent to encourage its customers to engage in infringing uses of Eventile's products.

Eventile also challenges Acufloor's claims of contributory infringement (Counts 4 and 8). "Contributory infringement under 35 U.S.C. § 271(c) requires proof that (1) the defendant had knowledge of the patent in suit, (2) the defendant had knowledge of patent infringement, and (3) the accused product is not a staple article or commodity of commerce suitable for a substantial noninfringing use." *Bio-Rad Labs.*, 998 F.3d at 1335.

Eventile argues Acufloor failed to allege (1) facts showing that Eventile had the requisite knowledge and (2) the absence of non-infringing alternative uses for its products.  These arguments are meritless.  Acufloor alleges that Eventile has known about Acufloor's patents and the infringing nature of Eventile's products since at least March 26, 2020, when Acufloor sent Eventile a cease-and-desist letter.  And Acufloor alleges that Eventile's allegedly infringing products "are tile leveling systems that are especially made and adapted for use during the installation of tile floors to ensure correct spacing and leveling of tiles.  The components of the EvenTile System are not staple articles of commerce and are not suitable for any substantially non-infringing use." (Doc. 1 at 19).  Acufloor has plausibly alleged contributory infringement.

Finally, Eventile argues Acufloor failed to state a claim for infringement of either of its design patents, so the Court should dismiss Counts 9 and 10. Eventile points to two characteristics of the patented wedge designs that its products lack: "a flat planar area without any ridges near the tip of the wedge" and "sharp 90 degree corner edges at the thicker end of the wedge." (Doc. 39 at 15).

"Determining whether a design patent has been infringed is a two-part test: (1) the court first construes the claim to determine its meaning and scope; (2) the fact finder then compares the properly construed claim to the accused design." *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir.

2020).  Both parts of this test involve factual determinations.  For example, claim construction often requires the court to distinguish between ornamental and purely functional features.  *See id* at 1342.  And the second part of the test requires the finder of fact to compare similarities in the overall designs— rather than isolated elements—to determine whether an "ordinary purchaser" would be deceived into purchasing one design supposing it to be the other.  *Id.* at 1341.

Eventile's argument is premature.  The Court cannot construe Acufloor's design patent claims at the motion-to-dismiss stage.  Even if claim construction were unnecessary, the "ordinary purchaser" test is also factual inquiry that may require examination of the prior art.  And it requires comparison of the overall designs, so merely identifying dissimilar features is not necessarily enough to defeat an infringement claim.  Acufloor has plausibly pled that Eventile infringed its design patents.  Eventile may renew its argument at a later stage of this case.

For these reasons, the Court will deny Eventile's motion to dismiss.  And because Acufloor's Complaint is not so vague or ambiguous that Eventile cannot reasonably prepare a response, the Court will not order a more definite statement.

## II.     Motion to Bifurcate and Stay

Forpac asks the Court to bifurcate and stay Acufloor's claims against it until the claims against Eventile are resolved because Forpac purchases its allegedly infringing products from Eventile.   Forpac argues bifurcation and stay is appropriate under the customer-suit exception and Federal Rule of Civil Procedure 21.   The Court disagrees.

The customer-suit exception is an exception to the first-filed rule, which applies when two actions with parallel issues are pending in two federal courts. *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013).   Under the first-filed rule, "the court initially seized of the controversy should hear the case," and the second case may be "dismissed, stayed, or transferred and consolidated." *Id.*   "Generally speaking, courts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011).   The exception serves efficiency and judicial economy because a suit against the manufacturer—who presumably has a greater interest in defending its actions against charges of patent infringement—will normally resolve the suit against its customer. *Id.*

The customer-suit exception does not support a bifurcation and stay in this case.   First, the first-filed rule itself does not apply because there is no

parallel litigation.  *See In re Dell Inc.*, 600 Fed. App'x 728, 730 (Fed. Cir. 2015) (explaining that the customer-suit exception applies only in "what already is or should be separate litigation with customers, thereby preventing parallel, active, duplicative proceedings.")  Second, the parties seem to agree that Eventile is not the manufacturer of the allegedly infringing products.  The policy considerations that favor resolution of a suit against the manufacturer before a suit against its customers are largely inapplicable here.

Third, bifurcating and staying the claims against Forpac would not serve efficiency or judicial economy.  The claims against Forpac and Eventile are nearly identical, and Forpac has not agreed to be bound by a judgment against Eventile.  So bifurcation of the case would likely result in duplication of work by the parties and the Court, and it would create a risk of inconsistent rulings.  Also, the Court cannot see how the indirect infringement claims against Eventile could resolve the indirect infringement claims against Forpac because those claims are based not just on the infringing nature of the products but also the actions of each Defendant to encourage or induce its customers to infringe.  Forpac has not addressed that issue.

Federal Rule of Civil Procedure 21 provides that a court may add parties, drop parties, or sever claims as remedies for misjoinder or nonjoinder.  "It is ultimately within the court's discretion to sever a party or claim to proceed separately from the main action."  *Clay v. AIG Aerospace Ins. Servs., Inc.*, 61

F. Supp. 3d 1255, 1271 (M.D. Fla. 2014).  The Court declines to split this case. Because the claims against Eventile and Forpac involve identical legal issues and similar and overlapping facts, the interests of efficiency and judicial economy are best served if they are litigated together.

Finally, Forpac asks the Court to limit the discovery Acufloor can seek from it because "all evidence relevant to the question of infringement will be in the possession of Eventile." (Doc. 47 at 14).  The Court finds no good cause to make that assumption, especially regarding the indirect infringement claims.  The Court will not limit the discovery Acufloor can seek from Forpac at this stage of the case.

Accordingly, it is now

**ORDERED:**

Defendant Eventile, Inc's Motion to Dismiss (Doc. 39) and Defendant Forpac, LLC's Motion to Stay or Bifurcate (Doc. 47) are **DENIED**.  Eventile must answer Acufloor's Complaint on or before **April 6, 2022**.

**DONE** and **ORDERED** in Fort Myers, Florida on March 23, 2022.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

13